UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRY LEE GOLDSBORO, II,

    Plaintiff,

v.   Case No: 6:25-cv-825-JSS-RMN

WARDEN JOHN DOE, SHERIFF
WAYNE IVEY, MAJOR
TORQUADO, MAJOR WILSON,
and MAJOR SAMUEL,

    Defendants.
_____/

# ORDER

Plaintiff, a prisoner proceeding pro se, sues five officers in their individual and official capacities under 42 U.S.C. § 1983: Brevard County Sheriff Wayne Ivey and four Brevard County Jail officers described as Warden John Doe and Majors Torquado, Wilson, and Samuel. (Dkt. 1 at 2–4; Dkt. 1-1 at 1–2.) The court screens Plaintiff's complaint under 28 U.S.C. § 1915A. Although some of the claims in the complaint are sufficiently pleaded, Plaintiff must file an amended complaint if he wishes to proceed as to other claims in the complaint that are not sufficiently pleaded.

## BACKGROUND

Plaintiff claims that in October 2022, he was transferred from the Florida Department of Corrections to the Brevard County Jail for a pending case. (Dkt. 1-1 at 2.) According to Plaintiff, the Brevard County Jail has a total "ban on books and paper," so he "was prohibited from transporting any of his legal mail despite having

four post[-]conviction motions pending" that were "due to be ruled on in May 2023." (*Id.*) Allegedly, between May 12 and 24, 2023, Plaintiff "received legal mail notifications" through the jail's electronic tablet system "indicating that legal mail had been received." (*Id.*) Plaintiff reports that the legal mail was then sent to the mail processing center for Smart Communications, where the mail was scanned to create an electronic copy, and the originals were destroyed. (*Id.*) According to Plaintiff, this practice caused a six-day delay before he could access the legal mail on a tablet, and the mail was related to cases where he had only thirty days to file an appeal. (*Id.*) Plaintiff was also allegedly "prohibited by the [p]roperty office from accessing his legal mail in his property because it was not legal mail related to" his pending Brevard County case. (*Id.*)

Plaintiff states that the jail provides only fourteen tablets for forty-eight inmates and since December 2024, his "dorm had only six tablets for [forty-eight] inmates. (*Id.*) Purportedly, "requests for more tablets ha[ve] been ignored." (*Id.*) Plaintiff further states that the "tablets are only available for about [ten] hours per day and can[] and have been confiscated." (*Id.*) He claims that officers have confiscated tablets indiscriminately and for the actions of only one person. (*See id.* at 2, 4–5, 9.) For example, Plaintiff asserts that on various dates in 2024 and 2025, "the officer in charge . . . confiscated all of the tablets due to the actions of one inmate who hid a tablet in his cell." (*Id.* at 4.) Plaintiff complains that these confiscations "delayed . . . [his] ability to access his legal mail to write his motions in his appeal." (*Id.*) He alleges that confiscations have caused him to lose research time and access to

legal mail available only on the tablet and have thus "prevented [him] from timely completing motions, conducting research, and submitting motions to the law library to request copies before mailing [the motions] to the courts." (*Id.* at 5.)

Plaintiff alleges that in addition to being the only way to access legal mail, the tablets furnish the only access to the law library, and even that access is limited. (*Id.* at 2, 5.) According to Plaintiff, the law library does not offer access to local rules, newly passed laws, or recent Supreme Court rulings and does not provide examples of forms, motions, civil rights complaints, or habeas petitions. (*Id.* at 2.) Further, Plaintiff claims, although the "jail has two [part-time] officers assigned to the law library," they are not "trained in the law" and "can offer no legal assistance." (*Id.*) Plaintiff also asserts that the books available on the tablets consist of only approximately 150 to 180 classic novels and he has no access to new or recent books. (*Id.* at 5.) Purportedly, he has no access to other forms of entertainment such as movies, either, and the unnamed warden "has commented that the tablets will never have movies as long as he[ i]s in charge." (*Id.* at 7 (emphasis omitted).)

Given the book and paper ban, the limited law library access, and Plaintiff's inability to access his legal paperwork for his previous convictions stored in his property, Plaintiff allegedly "had to file three of his post[-]conviction motions without the record and without any legal assistance from persons trained in the law, and all three motions were denied." (*Id.* at 2.) Plaintiff reports that he has "made mistakes in filing his post[-]conviction motions" in a timely fashion and failed to "follow certain appellate procedures, such as appealing to the proper court, . . . submitting motions

for rehearing, [and] citing proper caselaw to support his claims." (*Id.* at 3.) Plaintiff states that he has made additional procedural and formatting errors in civil rights cases about the conditions of his confinement and in other cases. (*Id.* at 4–5.) According to Plaintiff, although he was permitted to amend some motions, others were dismissed. (*Id.* at 3–5.) In addition, Plaintiff claims, the delays caused by the ban caused him to "los[e] as many as [six to fifteen] working days on orders that had [thirty-]day deadlines," and some orders imposed deadlines that expired before he received the orders. (*Id.* at 3.) Allegedly, on various dates in 2024 and 2025, Plaintiff also needed the law library to print copies of certain legal mail "so that he could include [it] as evidence" on appeal and in section 1983 complaints. (*Id.* at 6.) Plaintiff states: "[D]ue to an issue with Smart Communications, the law library personnel cannot access any legal mail that was sent to [him] since [November 1, 2024]; consequently, [he] has [seventy-five] legal mail documents that he cannot access." (*Id.*) According to Plaintiff, "this issue . . . has not been resolved" even though he submitted two grievances and the law library "contacted Smart Communications multiple times." (*Id.*)

Plaintiff alleges that Defendants "refuse to spend allocated funds" from an inmate welfare account supported by jail commissary sales "to improve the law library and provide legal materials and supplies to indigent inmates." (*Id.* at 8.) Plaintiff claims that the jail provides only four sheets of lined paper, two envelopes, and one pen each month to indigent inmates and he needed more than those supplies to prosecute his legal actions. (*Id.*) He states that as of January 2024, the account

contained more than $1 million. (*Id.*) While some funds were used to build a half-court basketball court, to provide chess boards in dorms, and to pay for additional security for a jail-wide tournament, Plaintiff alleges that these expenditures "cost nowhere near [$1 million], and the jail suddenly had money to replace the cell doors." (*Id.*) Allegedly, when Plaintiff filed a records request to ascertain how the funds are being spent, the records custodian told him that responding to his request would cost over $1,000, leading Plaintiff to believe that the funds are being misappropriated. (*Id.*)

Overall, Plaintiff asserts that the total book and paper ban implemented and enforced by Defendants is an arbitrary infringement on his rights with no valid penological objective. (*See id. passim.*) Plaintiff claims that "th[e] ban has not stopped drugs or contraband from entering the jail." (*Id.* at 3.) Moreover, Plaintiff identifies alternatives to the ban, such as "permit[ting] inmates to purchase up to three books per month from approved vendors to prevent tampering," with the books subject to a monthly search, and permitting "newer titles and law books [to] be added to the jail tablets." (*Id.*) Plaintiff further claims that Defendants have "fail[ed] to provide an adequate law library with assistance from persons trained the law" and that this failure has resulted in violations of Plaintiff's rights. (*Id.* at 9.) In general, Plaintiff charges Defendants with subjecting him to unconstitutional conditions of confinement and with infringing on his rights of access to the courts, free speech, and equal protection. (*Id.*) Plaintiff also asserts that Defendants violated article I, sections 4, 9, and 21, of the Florida Constitution. (Dkt. 1 at 3.) He seeks declaratory relief, preliminary and permanent injunctions, nominal and punitive damages, costs, and attorney fees. (*Id.*

at 5; Dkt. 1-1 at 1, 10.)

## APPLICABLE STANDARDS

"A dismissal for failure to state a claim under the early screening provision is no different from a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Danglar v. Dep't of Corr.*, 50 F.4th 54, 55 n.1 (11th Cir. 2022) (quoting *White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020)). Thus, the court "accept[s] the allegations in the . . . complaint as true and construe[s] them in the light most favorable to" the plaintiff. *Id.* "To avoid dismissal for failure to state a claim, [the] complaint must include factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the alleged misconduct." *Waldman v. Ala. Prison Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). "A pro se pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Id.* "However, a pro se pleading must still suggest that there is at least some factual support for a claim." *Id.* Moreover, a plaintiff's pro se status does not permit the court to "serve as de facto counsel for [him] or to rewrite an otherwise deficient pleading . . . to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted).

## ANALYSIS

Plaintiff's state and federal free speech claims against Sheriff Ivey may proceed to service of process. The court otherwise dismisses the complaint without prejudice for six reasons. First, Plaintiff does not describe any actions taken by Defendants in

their individual capacities. Second, the official-capacity claims against the unnamed warden and Majors Torquado, Wilson, and Samuel are duplicative of the claims against Sheriff Ivey. Third, Plaintiff does not sufficiently identify any case or claim that was dismissed due to the alleged deficiencies in the legal mail system and access to legal resources. Fourth, Plaintiff does not allege that his inability to read magazines, listen to music, or watch movies on the provided tablets threatens his health or safety or violates contemporary standards of decency. Fifth, Plaintiff does not assert that he is part of a protected class for federal equal protection purposes. Sixth, the court declines to exercise supplemental jurisdiction over the state law claims based on the Florida Constitution's guarantee of access to the courts because the claims raise a novel or complex issue of Florida law.

In explaining how the court arrived at these reasons and the outcome that they support, the court examines the individual- and official-capacity nature of Plaintiff's section 1983 claims before turning to the merits of these claims. The court then addresses Plaintiff's state law claims and considers his request for preliminary injunctive relief.

### A. Individual and Official Capacities

Although Plaintiff sues Sheriff Ivey, the unnamed warden, and Majors Torquado, Wilson, and Samuel in their individual and official capacities, Plaintiff does not allege individual actions taken by any Defendant. (*See* Dkts. 1, 1-1.) Instead, he describes Defendants' involvement in the alleged constitutional violations as supervisory rather than personal. (*See* Dkt. 1-1 at 1.) Because Plaintiff does not relate

Defendants' personal participation in the violations or explain how actions they took in their supervisory roles are causally connected to the violations, the court dismisses the individual-capacity claims. *See Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) ("The standard by which a supervisor is held liable in [an] individual capacity for the actions of a subordinate is extremely rigorous."); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.").

As to the official-capacity claims, "[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Here, each official-capacity claim against each Defendant is a claim against the government entity that runs the jail. Because Plaintiff's official-capacity claims against Sheriff Ivey suffice to sue this entity, the court dismisses the official-capacity claims against the other Defendants as duplicative. *See Parnell v. Sch. Bd. of Lake Cnty.*, 731 F. Supp. 3d 1298, 1315 (N.D. Fla. 2024) ("Claims against the Lake County Superintendent in her official capacity are dismissed as duplicative of claims against the Lake County School Board.").

## B. Section 1983

Plaintiff's section 1983 claims allege unconstitutional conditions of confinement and violations of the rights of access to the courts, free speech, and equal protection.

The court discusses these topics in turn.

### 1. Conditions of Confinement

Plaintiff claims that the situation at the jail amounts to the imposition of unconstitutional conditions of confinement, in violation of the punishment- and due process-related protections provided by the Eighth and Fourteenth Amendments. (*See* Dkt. 1-1 at 9–10.) Regarding a conditions of confinement claim, "the minimum standard allowed by the [Fourteenth Amendment's] due process clause [for pretrial detainees] is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)).

A conditions of confinement plaintiff must make two showings: (1) "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities'" and (2) "a subjective showing that the official [who caused the deprivation] had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). For the objective showing, "[t]he challenged condition must be 'extreme,'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), such that the "condition . . . 'poses an unreasonable

risk of serious damage to [the plaintiff's] future health' or safety," *id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Further, the complained-of risk must not be "one that today's society chooses to tolerate." *Id.* (quoting *Helling*, 509 U.S. at 36). For the subjective showing, the plaintiff must allege that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1289–90 (quoting *Farmer*, 511 U.S. at 837).

Plaintiff's conditions of confinement claims fail because he does not show that the ban on physical books, the limited number of books available on the provided tablets, and his inability to access other forms of entertainment, such as movies, create conditions so extreme as to threaten his health or safety or violate contemporary standards of decency. Accordingly, these claims are dismissed. *See id.* at 1289.

### 2. Access to the Courts

Plaintiff asserts that the jail's book and paper ban causes undue delay in the receipt of his legal mail and impairs his ability to access his stored legal paperwork. (*See* Dkt. 1-1 at 2, 4–5.) He also asserts that combined with the other issues at the jail—namely, the limited number of tablets available for inmates to access their scanned legal mail and law library resources, the limited number and type of legal resources available to inmates, and officials' refusal to spend more of the allocated funds to improve the law library and provide additional legal supplies to inmates—the ban infringes on the federal constitutional right to access the courts. (*See id.*)

"Access to the courts is clearly a constitutional right," as implied by "the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002), and *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993)). However, "in an access-to-courts claim, 'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (quoting *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996)). A plaintiff must "prove that he has a colorable underlying claim for which he seeks relief." *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006). Accordingly, the plaintiff must specifically identify in his complaint "a nonfrivolous, arguable underlying claim." *Id.* (cleaned up). "The allegations about the underlying cause of action must be specific enough to give fair notice to the defendants and must 'be described well enough to apply the nonfrivolous test and to show that the arguable nature of the underlying claim is more than hope.'" *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010) (internal quotation marks omitted) (quoting *Christopher*, 536 U.S. at 416).

Here, although Plaintiff shares some information about the cases purportedly affected by the situation at the jail and attaches related filings to his complaint, he does not describe the underlying causes of action with enough specificity for the court to ascertain whether they contained nonfrivolous claims and does not adequately connect

his allegations with the attached filings. (*See* Dkts. 1, 1-1, 1-6.) Consequently, the court dismisses the access-to-courts claims without prejudice. *See Cunningham*, 592 F.3d at 1271.

### 3. Free Speech

Plaintiff alleges that through the complete ban on physical books, the limited availability of books on the tablets, and the unavailability of other forms of entertainment, Defendants have violated his First Amendment rights, including freedom of speech and freedom of expression. (*See* Dkt. 1-1 at 9.) "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). As relevant here, the Supreme Court has explained:

> The right of freedom of speech . . . has broad scope. The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance. This freedom embraces the right to distribute literature and necessarily protects the right to receive it.

*Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (footnote and citation omitted). However, prisoners' "free speech rights are uncontrovertedly limited by virtue of their incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999). For "a prison regulation" that allegedly "impinges on inmates' constitutional rights" to be valid, the regulation must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[E]ven

when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.").

Upon reviewing the complaint, the court concludes that Plaintiff's official-capacity claim against Sheriff Ivey for violation of Plaintiff's First Amendment right to free speech is sufficient to proceed to service of process. The complaint plausibly alleges that the complained-of situation at the jail infringes on Plaintiff's right and does not serve a legitimate penological interest. (*See* Dkt. 1-1 at 9.) *See Paull v. Tony*, No. 19-63170-CV, 2020 U.S. Dist. LEXIS 27510, at *7 (S.D. Fla. Feb. 14, 2020) (recommending that a pro se prisoner's First Amendment claim based on a jail's book ban proceed when the complaint could "be liberally construed to argue that the ban [wa]s not reasonably related to a legitimate penological interest," in violation of "[the p]laintiff's constitutional rights under *Turner*").

### 4. Equal Protection

Plaintiff claims that he is being denied equal protection because similarly situated inmates at other facilities have access to physical books and various kinds of media. (*See* Dkt. 1-1 at 7.) "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment[] and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001)); *see also McCleskey v. Kemp*,

481 U.S. 279, 292 (1987) (explaining that a plaintiff "must prove that the decisionmakers in his case acted with discriminatory purpose" (emphasis omitted)).

Plaintiff does not allege his membership in a protected class for his equal protection claims, and to the extent that he points to his incarcerated status, the claims fail. *See Nyberg v. Crawford*, 290 F. App'x 209, 211 (11th Cir. 2008) ("[P]risoners are not a suspect class . . . ."). The court thus dismisses Plaintiff's equal protection claims.

## C. State Law

In addition to bringing section 1983 claims, Plaintiff asserts that Defendants have violated article I, sections 4, 9, and 21, of the Florida Constitution, which pertain to free speech, due process, and access to the courts. (Dkt. 1 at 3.) *See* Fla. Const. art. I, § 4 ("No law shall be passed to restrain or abridge the liberty of speech . . . ."); *id.* § 9 ("No person shall be deprived of life, liberty[,] or property without due process of law . . . ."); *id.* § 21 ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial[,] or delay."). Although section 1983 does not furnish a remedy for violations of state law, "[s]upplemental jurisdiction permits parties to append state claims in federal cases, provided that the state[ ]law claims 'form part of the same case or controversy' as the federal claims." *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (quoting 28 U.S.C. § 1367(a)). The court does not pass on the forms of relief available to Plaintiff under the Florida Constitution but observes that in general, Plaintiff seeks a variety of relief. (*See* Dkt. 1 at 5; Dkt. 1-1 at 1, 10.) Because the complaint does not explain how Plaintiff's rights under the Florida Constitution have been violated, the court liberally construes the claims under

- 14 -

the Florida Constitution as running parallel to the section 1983 claims discussed above.  (*See* Dkts. 1 to 1-7.)  *See Waldman*, 871 F.3d at 1289.

With respect to free speech and conditions of confinement, the state claims rise and fall with the federal claims.  The Florida Supreme Court has explained that "[t]he scope of the protection accorded to freedom of expression in Florida under article I, section 4[,] is the same as is required under the First Amendment."  *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982); *see Fla. Ass'n of Pro. Lobbyists, Inc. v. Div. of Legis. Info. Servs. of the Fla. Off. of Legis. Servs.*, 525 F.3d 1073, 1076 n.3 (11th Cir. 2008).  Consequently, because the court determines that Plaintiff's First Amendment official-capacity claim against Sheriff Ivey is sufficient to proceed to service of process, Plaintiff's related claim under the Florida Constitution is also sufficient to proceed.  Similarly, "[u]nder the Florida Constitution, the . . . due process standards are the same as the federal standards."  *Modern, Inc. v. Fla., Dep't of Transp.*, 381 F. Supp. 2d 1331, 1346 n.26 (M.D. Fla. 2004) (citing *Duncan v. Moore*, 754 So. 2d 708, 712 (Fla. 2000), and *Rice v. State*, 754 So. 2d 881, 884–85 (Fla. Dist. Ct. App. 2000)).  Therefore, because Plaintiff fails to state conditions of confinement claims under the federal constitution, he also fails to state such claims under the Florida Constitution.  The court accordingly dismisses the conditions of confinement claims based on the Florida Constitution.

With respect to access to the courts, however, the Florida Constitution seemingly affords greater protection than does the United States Constitution.  *See Mitchell v. Moore*, 786 So. 2d 521, 527 (Fla. 2001) ("The right to access is specifically

mentioned in Florida's constitution. Therefore, it deserves more protection than those rights found only by implication." (citation omitted)). There is "a lack of clarity about whether a Florida constitutional claim [for access to the courts] requires a showing of actual injury or something less such as an impermissible burden or a significantly difficult impediment test." *Wingard v. Sprigle*, No. 4:20cv341-AW-MAF, 2022 WL 18103334, at *8, 2022 U.S. Dist. LEXIS 234401, at *20 (N.D. Fla. Nov. 15, 2022) (internal quotation marks omitted) (citing *Mitchell*, 786 So. 2d at 527; *Lambrix v. Singletary*, 618 So. 2d 787, 788 (Fla. Dist. Ct. App. 1993); and *McCuiston v. Wanicka*, 483 So. 2d 489, 492 (Fla. Dist. Ct. App. 1986)), *report and recommendation adopted by* 2023 WL 25355, at *1, 2023 U.S. Dist. LEXIS 18, at *2 (N.D. Fla. Jan. 3, 2023). This lack of clarity presents "a novel or complex issue of [s]tate law" permitting the court to "decline to exercise supplemental jurisdiction" over Plaintiff's claims. *See* 28 U.S.C. § 1367(c)(1). Accordingly, in its discretion, the court dismisses without prejudice the claims that Plaintiff bases on the Florida Constitution's guarantee of access to the courts. *See Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Among the factors a district court should consider in exercising its discretion [regarding whether to dismiss state law claims without prejudice on grounds related to supplemental jurisdiction] are judicial economy, convenience, fairness, and comity. Both comity and economy are served when issues of state law are resolved by state courts." (citation omitted)).

### D. Preliminary Injunctive Relief

Plaintiff seeks preliminary injunctive relief. (*See, e.g.*, Dkt. 1-1 at 10.) As the

Eleventh Circuit has explained, preliminary injunctive relief is appropriate only if the party seeking the relief demonstrates all of the following elements:

> (1) [that the claim supporting the request for preliminary injunctive relief has] a substantial likelihood of success on the merits[,] (2) that the preliminary [injunctive relief] is necessary to prevent irreparable injury[,] (3) that the threatened injury outweighs the harm the preliminary [injunctive relief] would cause the other litigant[s,] and (4) that the preliminary [injunctive relief] would not be averse to the public interest.

*Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).  The granting of preliminary injunctive relief is "an 'extraordinary and drastic remedy,' and [Plaintiff] bears the 'burden of persuasion' to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).  Plaintiff has neither attempted to allege nor established these elements.  (*See* Dkts. 1 to 1-7.)

Further, although Plaintiff cites Federal Rule of Civil Procedure 65, (Dkt. 1-1 at 1), he fails to fully comply with the rule, *see* Fed. R. Civ. P. 65, or with the Middle District of Florida Local Rules governing requests for preliminary injunctive relief, *see* M.D. Fla. R. 6.01, 6.02.  For example, Rule 65 states that the court may grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c), and Local Rules 6.01 and 6.02 require a motion for preliminary injunctive relief to include "a precise and verified explanation of the amount and form of the required security," M.D. Fla.

R. 6.01(a)(4), 6.02(a)(1). However, Plaintiff does not address the security requirement. (*See* Dkts. 1 to 1-7.) For these reasons, the court denies the request for preliminary injunctive relief.

## CONCLUSION

Accordingly:

1. The official-capacity federal and state claims asserted in the complaint against Sheriff Ivey for violation of Plaintiff's free speech rights **REMAIN PENDING** in this action, as the court finds them sufficiently pleaded to proceed to service of process. However, all other claims in the complaint (Dkt. 1) are **DISMISSED without prejudice**.

2. The court declines to exercise supplemental jurisdiction over the state law claims based on the Florida Constitution's guarantee of access to the courts. However, if Plaintiff wishes to proceed with the **other** dismissed claims, he must file an amended complaint on or before October 16, 2025.

    a. To amend his complaint, Plaintiff shall fill out a new civil rights complaint on the appropriate form and shall mark it "Amended Complaint." The amended complaint must include **all** claims that Plaintiff seeks to assert in this case (not the state law claims based on the Florida Constitution's guarantee of access to the courts). The amended complaint may not refer to or incorporate portions of the prior complaint.

    b. The amended complaint supersedes Plaintiff's prior complaint, and all

claims that Plaintiff seeks to assert in this case—including the claims identified in this order as sufficient to proceed to service of process—must be raised in the amended complaint.

c. In the amended complaint, Plaintiff must specifically describe the actions taken by each Defendant and how those actions violated his constitutional rights.

d. The amended complaint—including the claims identified in this order as sufficient to proceed to service of process—is subject to screening for frivolity under 28 U.S.C. § 1915A.

3. Should Plaintiff fail to timely file an amended complaint, the case will proceed to service of process of the complaint (Dkt. 1) on Sheriff Ivey for the pending claims identified above.

4. Plaintiff has filed this action pro se, and he is **DIRECTED** that he must immediately advise the court of any change of address. He shall entitle the paper "Notice to the Court of Change of Address." This notice shall contain only information pertaining to the address change and the effective date of such and should not contain other motions or requests. Failure to inform the court of an address change may result in the dismissal of this case without further notice to Plaintiff.

5. The Clerk is **DIRECTED** to mail to Plaintiff, along with this order, a copy of the standard prisoner civil rights complaint form.

**ORDERED** in Orlando, Florida, on August 5, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties